Moncure, P.,

after stating the case, proceeded :
Four errors are assigned in the proceedings and judgment aforesaid : 1st. That the court erred in refusing to quash the indictment, or to order the prisoner to be carried before a justice of the county, and to summon the witnesses, upon whose information the indictment was made, to appear and testify before the justice : 2d. That the court erred in sustaining the demurrer to the plea in abatement, which presented the same question as that set out in the first assignment of error: 8d. That the court erred in overruling the challenge for cause to the venireman Graham: 4th. That the court erred in excluding from the jury, the written testimony of thejwitnesses, or of the witness Caroline Coleman, taken down and properly authenticated at the inquisition held by the coroner, when offered in evidence to impeach the witnesses. We will consider these errors in the order in which they are assigned.
The 1st and 2d present the same question; and we will therefore consider them together. That question is, that the accused was entitled, as matter of right, to de *925 mand that he be carried before a justice of the county to be examined for the said offence, before he could be tried, or even effectually indicted therefor; and that he ' was so entitled, even though he had been actually indicted for the offence in the County court; and upon his arraignment on the indictment in that court, had thereon demanded to be tried for the offence before the Circuit court; and even though he asserted his supposed right, for the first time, in the Circuit court, when set to the bar of that court, according to his demand to be tried therein.
The question whether, under the act passed April 27, 1867, entitled “ an act to revise and amend the criminal procedure,” (acts of assembly, 1866-67, p. 915,) a person indicted for-felony in the proper court to try him for the offence , but, when indicted, not being in custody, nor having been arrested or examined by a justice, should be arrested and sent before a justice to be examined; or whether he may he taken on a capias, and tried upon the indictment, without an examination by a justice, was very fully considered by this court in Chahoori’s case, 20 Gratt. 733; and three of the judges delivered elaborate opinions upon it. The judgment of the court below upon the question, was therefore, in that case, affirmed, and Chahoon was tried and convicted, without having been previously examined by a justice. When that decision was made, the legislature was in session ; and there have since been two sessions of the legislature, including-the present—and yet there has been no change of the-law made, and no act passed declaratory of the meaning of the legislature in the existing law on the subject. The presumption, therefore, is, that the legislature is satisfied with the construction thus placed upon the law, and is disposed to acquiesce therein. We consider it important that the construction of the law should be settled; *926 more important indeed than that it should be settled in one way rather than the other; especially as the legislature can, at any time, change the. law, if deemed proper, and as may be deemed proper. If it be deemed advisable to have a preliminary examination in cases of felony, the legislature can easily prescribe how, when, and by whom the examination is to be made, and what shall be the effect of it—whether it shall be made by a justice of the peace, or two or more justices, or by the county or corporation court, or the judge thereof in vacation, or otherwise. Ve are, therefore, of opinion, without reviewing and reconsidering the question which was so much considered in Chahoon’s case, as aforesaid, that the decision of this court in that case, though by a divided court, should, for the reasons and under the circumstances, aforesaid, be accepted and regarded as a decision and settlement of the question as to the proper construction of the said act.
Such being our opinion upon the general question as to the necessity of a preliminary examination by a justice of the peace in any case of felony, it is unnecessary to enquire, whether if such necessity exists in any case, it existed in this case; in which the accused was arrested and committed for the offence by the warrant of a justice of the peace and the acting coroner in the case, and was actually in the jail of the county under such arrest and commitment when the indictment was found against him in the County, court; or whether, if he even had a right to demand that he be carried before a justice of the county to be examined for the said offence, he did not waive that right by demanding in the County court to be tried for the offence in the Circuit court, instead of demanding to be carried before a justice for examination as aforesaid; and by failing to make such *927 latter demand, until lie was set to the bar of the Circuit court under bis demand to be tried therein.
"We are, therefore, of opinion that the Circuit court did not err in refusing to quash the indictment, or to order the accused to be carried before a justice of the county for examination; nor in sustaining the demurrer to the plea in abatement as aforesaid.
The 3d assignment of error presents the question, whether the venireman Graham was a competent juror.
There is no question, perhaps, about which there has been more apparent conflict of decision in this State, or in regard to which it is more difficult to derive from our many cases on the subject any definite rules which will apply to all cases that may arise. The object of the law is, to secure to every man who is charged with a criminal offence, a trial by an impartial jury. And this rule has been established by the cases, if no other, that if a venireman has formed, and still more if he has formed and expressed, a decided or substantial opinion as to the guilt or innocence of the accused, no matter upon what ground it was formed, whether from having heard the evidence on some former trial or examination, or from mere rumor or otherwise, he is an incompetent juror to try the case; and if, on the other hand, his opinion be merely hypothetical, he is not incompetent on that ground. The difficulty is in determining, in any given case, whether the opinion be decided or substantial or mei’ely hypothetical, there being in almost every case some peculiarity of circumstance. And the desire to remove or lessen this difficulty by laying down certain other rules for our guidance, has been the fruitful source of the apparent conflict in many of the cases. Thus, if a venireman has formed an opinion as to the guilt or innocence of the accused from having heard the evidence on a former trial *928 or examination of the case, it would be difficult, if not impossible, to regard such opinion otherwise ' than as decided or substantial, within the meaning of the rule; and he would, generally, if not always, be considered an incompetent juror, even though he-might think and say that he could give the accused an impartial trial. So, on the other hand, if a venireman has formed an opinion as to the guilt or innocence of the accused, from mere rumor, the presumption, in the-absence of evidence to the contrary, is, that such opinion is merely hypothetical, and will be so considered, even though he speak of it as a decided or substantial opinion,, if he says he has no prejudice against the accused and thinks he can give him a fair and impartial trial. But if the court- be satisfied, either from the venireman’s, own statement or otherwise, that the opinion is in fact decided or substantial, he will be an incompetent juror. There are intermediate cases which often give rise to difficulty on this subject. The venireman may have formed an opinion from having heard a part only of the evidence on a former trial; or from having heard the-whole or part of the evidence given on a former trial, through persons who were present, in whose veracity and accuracy he may have more or less confidence; or from having read an account of such evidence in a newspaper. We cannot lay down any rule for the government of such cases, except the general rule before stated; and the court must determine, as best it may, whether the opinion be decided or substantial, or merely hypothetical. It would be dangerous to lay down a rule; and no case has ever decided, that a venireman, who has formed an opinion from accounts received from witnesses out of court, and still less from accounts received from others, as to statements made by witnesses, .either in or out of court, is therefore necessarily an incompetent juror, *929 even though he may regard the persons from whom he received his information as persons of general veracity and accuracy, and may credit what he has heard from them. We know that witnesses who make statements out of court, of transactions about which they may have testified in court, still more persons who profess to detail what they may have heard in or out of court, often speak carelessly, and generally omitting particulars which may be very material. And we know that those who listen to them, often listen carelessly; and though they almost always form some impression or opinion of the case from what they hear, yet that opinion is not always, and perhaps not often, decided or substantial, in the meaning of the rule aforesaid. The court must determine that question in all such cases, in view of all the circumstances.
There is nothing in the decision of Clore's case, 8 Gratt. 606, which is in conflict with what has been said; though there are expressions in that case which may seem to be so. We need not say that we have the highest respect and reverence for the memory of the great Judge, (Lomax,) who delivered the opinion of the court in that case; and it is certainly a very learned and philosophical opinion. But the opinion of every court must be read and construed in reference to the decision of the court. So read and construed, we entirely approve the opinion of the court in Glove’s case; in which it was held that the venireman Huffman was a competent juror. He stated “ that he had not heard any of the evidence, nor had he heard any report of it from those who had heard it; but from the rumor of the neighborhood he had formed an opinion, which was, at the time he spoke, existing on his mind, and which he should stick to, unless the evidence should turn out to be different from what rumor had reported it to be. That he had no prejudice nor partiality for or against the prisoner, and be *930 lieved he could give Mm a fair and impartial trial, according.to the evidence that should be given in.” Some of the observations of the court in regard to the competency of the said juror, are very appropriate to the present occasion. After saying that none are so apt to form opinions upon what they may have heard that is material in the case, than those who are the most intelligent, discreet and upright, and at the same time, the most discriminating; such as are, of all the community, the most fit to sit in trial upon the criminal, the court thus proceeds: “If they are disqualified as jurors, then, those best qualified will be excluded from passing between the Commonwealth and the prisoner, in cases where vindication of guilt or innocence will be most vital. Courts should be careful in laying down rules as to the qualification of jurors, which will throw jury trials, and the administration of criminal justice, into the hands of the most senseless and ignorant and least competent to pronounce a just and legal verdict.”
Observations equally strong and appropriate on this subject have been made by the court in other cases. In Moran's case, 9 Leigh 651, which was decided by a very able court consisting of fifteen judges, the opinion of the court was delivered by Summers, J. It thus proceeds, on the subject we are now considering: “This court is unanimous in the opinion that the prisoner’s challenges for cause to the jurors, H. and T. ivere prop-:, erly overruled. Those jurors entertained no ill will against the prisoner, or prejudices by which their minds might have been influenced in trying his cause. They had heard the reports of the occurrence, and one of them a part of the evidence. Their minds had necessarily come to some conclusions, dependent however on the accuracy and fullness of the reports- and statements which had reached them; and they were each satisfied *931 that they could pass fairly and impartially between the prisoner and the commonwealth. This, we think, was all that the most scrupulous regard to public justice, and the rights and safety of the prisoner required. When atrocious acts are committed, they necessai’ily become the subjects of conversation and remark, leading to impressions and opinions favorable or unfavorable to the party accused: but when such opinions have not impressed the mind with strong and decided conviction, by which the justice and fairness of the juror’s decision upon the evidence may be influenced, we think that no disqualification is produced. Sustaining challenges to1, jurors for favor on slight grounds, tends to place the administration of public justice in the hands of the most ignorant and least discriminating portion of the community, by which the safety of the accused may be endangered, and the proper administration of the laws put to hazard; and we are therefore not disposed to enlarge the grounds of challenge beyond those properly deducible from the cases heretofore decided.”
Besides the cases before referred to, the following seem to be the principal ones on the subject in our reports; many of them being referred to and commented upon by the learned counsel for the plaintiff in error. Lithgow's case, 2 Va. ca. 297; Sprouce's case, id. 375; Pollard's case, 5 Rand. 659; Mendum's case, 6 Rand. 704; Osiander's case, 3 Leigh 780; Maile's case, 9 Leigh 661; Armistead's case, 11 id. 657; McCune's case 2 Rob. R. 771; Eppe's case 5 Gratt. 676; Smith's case, 6 id. 696, and 7 id. 593; Wormley's case, 10 id. 658; Montague's case, id. 767; and Bristow's case, 15 id. 634.
We have examined all the cases, and according to the rule laid down or recognized in all of them, the venireman Graham in this case was a competent juror, not having formed a decided or substantial opinion as *932 to the guilt or innocence of the accused; his opinion on that subject, so far as he had formed one, being in fact only hypothetical. He was not present when the coroner’s inquest was taken, and heard none of the evidence given on that occasion. He did not even converse with any of the witnesses who were then examined. Some of the persons from whom he had heard the relation of the evidence were'present at the examination upon the said inquest. He believed the statement of the evidence, made to him by the persons he had heard speak of it, to be entitled to full credit; and that what they said was a true narrative of what was. testified before the coroner; and upon this he had formed and expressed an opinion with regard to the guilt or innocence of the accused. But he did not say that such opinion was a decided one. On the contrary he-expressly said that it was not a decided one; that he believed, notwithstanding the formation and expression of such opinion, he could as a juror, do justice to the accused; that he felt no prejudice against him; and that he believed he would be able to render his verdict upon the evidence at the trial,, uninfluenced by his preconceived opinion. In some of the cases referred to, the venireman -whose competency was in question, spoke of his preconceived opinion as being decided; in some of them it was formed, in part at least, from his having heard a part of the evidence given at a former trial; and in several, if not most of them, the evidence tending to show that such opinion was decided, was much stronger than it was in this case, if it can be said that there was any such evidence in this case; and yet it was held that such opinion was not decided within the meaning of the rule, but only hypothetical, and that such veniremen were competent jurors. Without setting out a statement of the facts in *933 regard to the opinions of these different veniremen, we refer to the cases themselves, in which those facts can readily be seen; and besides the cases of Moran and of Clore, to which we have already specially referred, we also refer .specially to Pollard's case, Osiander's case, Maile’s case, Mrmistead’s case, Eppes' case, (a strong one,) Smith's case, (two cases) and Wormley's case, ubi supra. "We call special attention to the opinions of the court delivered by Scott, J., in Osiander's case, and by Leigh, J., in Eppes' case. We all know how great were the learning and experience of those judges, and indeed of the whole court of which they were members, in the criminal law and practice of the State. In all cases great weight is justly due to the opinion of a court before whom veniremen are questioned and examined in regard to their competency as jurors. Montague's case, 10 Gratt. 767. That court, which sees, hears and knows the venireman, can much better judge of his fitness to be a juror than we can.
We are, therefore, of opinion, that the venireman Graham was a competent juror in this case.
The 4th and only remaining assignment of error presents the question, as to the competency of the testimony of the witnesses taken down at the inquisition held by the coroner, when offered in evidence to impeach the testimony of the said witnesses on the trial.
Hothing was said about this assignment of error in the argument, and it seems to have been abandoned. At all events we think it is not well founded, for reasons which sufficiently appear in the bill of exceptions taken to the ruling of the court excluding the impeaching testimony from the jury. The said testimony was not offered by the counsel for the accused until during his closing argument in the case; and the attention of the witnesses was not called during their examination to the *934 discrepancies, tif any, between their statements on the trial and those made by them before the coroner. That their attention should have been so called, in order to make the latter statements admissible as impeaching testimony, even if offered in due time, see 1 Gfreenleaf on Ev., § 462, and the note. See also Unis v. Charlton’s adm’r, 12 Gratt. 484.
Upon Lthe whole, we are of opinion that there is no error in the judgment, and that it be affirmed. And as the day fixed for the execution of the sentence of the court below has already passed, the cause must be remanded to the said court in order that another day may be fixed for that purpose.
Christian, J. said that on the question of the right of the prisoner to be examined by a justice, he had concurred in the opinion of Staples, J., in Chahoon’s ease. He had not changed his opinion on that question; blit acquiesced in the decision in this case; and the prisoner had waived his right to such an examination, if he had it.